**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **NEFY JONATHAN GARCIA ZARATE** | **CIVIL CASE NO. 26-1628** |
| **VERSUS** | **JUDGE EDWARDS** |
| **WARDEN RIVER CORRECTIONAL CENTER, ET AL** | **MAG. JUDGE WHITEHURST** |

**MEMORANDUM RULING AND ORDER**

Before the Court is a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (R. Doc. 1) filed by Petitioner Nefy Jonathan Garcia Zarate ("Zarate"), an immigration detainee at the River Correctional Center in Ferriday, Louisiana. The federal Respondents ("the Government") answered the Petition (R. Doc. 13). Zarate did not submit a reply.

After careful consideration of the record, the parties' memoranda, and the applicable law, the Petition is **GRANTED**.

## I. BACKGROUND

Zarate is a native and citizen of Guatemala. *See* R. Doc. 1 at 3. He entered the United States on December 13, 2015, near Hidalgo, TX, without inspection by an immigration officer. *See* R. Doc. 13-1 at 1. Zarate was apprehended within fourteen days of entry and was processed for Expedited Removal with Credible Fear. *See* R. Doc. 13 at 7. An asylum officer found Zarate demonstrated a credible fear of persecution or torture. *See id*. On June 6, 2016, Zarate was served a Notice to Appeal

charging him as removable under INS § 212(A)(7)(A)(i)(I) as a noncitizen present in the United States without having been admitted or paroled and without valid entry documents. *See* R. Doc. 13-1 at 1. The same day, Zarate was released under a $7,500 bond. *See id.* at 3. Zarate remained on release until he was re-detained on August 30, 2025.

On April 2, 2026, an immigration judge denied Zarate's application for asylum and withholding of removal ordering him removed to Guatemala. *See id.* at 14. Zarate appealed the removal order to the Board of Immigration Appeals ("BIA") on April 29, 2026. According to the Executive Office for Immigration Review's automated case information system, that appeal remains pending.[1] Accordingly, the removal order is not yet administratively final.

## II. <u>LAW AND ANALYSIS</u>

Zarate's Petition contests his detention on the following eight grounds: (1) "Unlawful Seizure and Arrest Without Judicial Warrant, Probable Cause, or Constitutionally Adequate Process"; (2) "Coercive Detention Practice and Retaliatory Arrest Pressure Violating Due Process"; (3) "Prolonged Civil Immigration Detention Without Meaningful Individualized Review"; (4) "Deliberate Indifference and Denial of Adequate Medical Care for Diabetes, Ear Pain, and Medication Side Effects"; (5) "Punitive Conditions of Civil Detention: Food and Water Rationing, Spoiled Food, Unsanitary and Overcrowded Conditions"; (6) "Retaliatory Transfer, Punitive Isolation, and Interference With Access to the Court"; (7) "Risk of Removal to Third-

[1] https://acis.eoir.justice.gov/en/

Country Transfer Before Meaningful Judicial Review"; and (8) "Cumulative Due Process Violation and Arbitrary Executive Detention." *See* R. Doc. 1.

The Government argues that a habeas petition is not an appropriate way to challenge the conditions of arrest and detention, that Zarate's detention is mandatory under § 1225(b)(2), and that no additional process is constitutionally required.

**a. Arguments Unrelated to the Lawfulness of Detention**

Habeas "is not available to review questions unrelated to the cause of detention." *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976). Rather, "if a favorable determination ... would not automatically entitle [the detainee] to accelerated release, the proper vehicle is a § 1983 suit" instead. *Carson v. Johnson*, 112 F.3d 818, 820–21 (5th Cir. 1997). As relevant here, "[u]nconstitutional conditions of confinement—even conditions that create a risk of serious physical injury, illness, or death—do not warrant release." *Ahmed v. Warden*, No. 24-1110, 2024 WL 5104545, at *1 (W.D. La. Sept. 25, 2024), *report and recommendation adopted*, 2024 WL 5495437 (W.D. La. Dec. 11, 2024) (citations omitted); see also *Rice v. Gonzalez*, 985 F.3d 1069, 1070 (5th Cir. 2021) ("[W]e also conclude that the Great Writ does not, in this circuit, afford release for prisoners held in state custody due to adverse conditions of confinement."); *Sarres Mendoza v. Barr*, No. 18-3012, 2019 WL 1227494, at *2 (S.D. Tex. Mar. 15, 2019) ("Claims concerning a prisoner's conditions of confinement may not be brought in a habeas corpus proceeding, and are actionable, if at all, in a civil rights action."). "Nor do allegations of mistreatment that amount to cruel and

unusual punishment nullify an otherwise lawful detention." *Ahmed*, 2024 WL 5104545, at *1 (citations omitted).

Here, Zarate's arguments related to his arrest, medical care, and conditions of detention are all unrelated to the lawfulness of his detention, and this habeas corpus action is not the proper procedural avenue to address them.

Zarate also raises a concern that the Government will transfer him "in retaliation for filing this Petition and to defeat jurisdiction." *See* R. Doc. 1 at 7. However, this Court's jurisdiction would not be affected by any transfer within the United States, and a fear of transfer does not provide a basis for habeas corpus relief. See *Oliveira v. Patterson*, No. 6:25-CV-01463, 2025 WL 3091705, at *1 (W.D. La. Oct. 9, 2025) (explaining that transfer of a petitioner to another facility located within the United States does not affect a court's jurisdiction); see also *Griffin v. Ebbert*, 751 F.3d 288, 290 (5th Cir. 2014) ("Jurisdiction attached on that initial filing for habeas corpus relief, and it was not destroyed by the transfer of petitioner and accompanying custodial change.").

**b. Basis for Detention**

Zarate argues his detention is "arbitrary." *See* R. Doc. 1 at 8. The Government responds that Zarate's detention is authorized under § 1225(b)(2), as interpreted by the Fifth Circuit in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026). Under 8 U.S.C. § 1225(a)(1), a noncitizen who is present in the United States but has not been admitted is deemed an applicant for admission. Section 1225(b)(2)(A) generally

requires the detention of an applicant for admission who is not clearly and beyond a doubt entitled to be admitted while removal proceedings are pending.

*Buenrostro-Mendez v. Bondi* forecloses any argument that Zarate's detention is arbitrary. 166 F.4th 494 (5th Cir. 2026). That conclusion, however, does not resolve Zarate's constitutional claim.

As this Court has frequently recognized, the question of whether Congress authorized detention under § 1225(b) is analytically distinct from whether the Government may revoke a liberty interest without affording constitutionally adequate process. See *Diallo v. Trump*, 1:25-CV-2012, 2026 WL 1230389 (W.D. La. Mar. 5, 2026); *Kilic v. Acuna*, 1:25-CV-01928, 2026 WL 1652575, at *2 (W.D. La. June 8, 2026); *Ghughunishvili v. Trump*, 3:26-CV-00086, ECF No. 13 (W.D. La. Mar. 20, 2026); *Garcia-Gil v. Acuna*, 1:26-CV-00207, ECF No. 10 (W.D. La. April 29, 2026); *Cunalata v. Wyatt,* No. 3:26-CV-01155, 2026 WL 2059117 (W.D. La. July 16, 2026).

**c. Procedural Due Process**

As previously explained in *Diallo, Kilic, Ghughunishvili, Garcia-Gil*, *Andrade-Cunalata* and other cases, Zarate's procedural due process claim is separate and apart from whether he is ultimately subject to mandatory detention under § 1225(b). Rather, the question is whether, after the Government permitted him to remain released under bond in the United States for almost 10 years, the Fifth Amendment required some form of individualized process before that liberty could be revoked. *See Hernandez-Fernandez v. Lyons*, 2025 WL 2976923, at *7, *9 (W.D. Tex. Oct. 21, 2025).

Neither *Dep't of Homeland Sec. v. Thuraissigiam,* 591 U.S. 103 (2020), *Jennings v. Rodriguez*, 583 U.S. 281 (2018), nor *Buenrostro-Mendez* forecloses Zarate's constitutional claim. As this Court observed in *Diallo*, those decisions address Congress's statutory detention authority and the scope of constitutional protections afforded applicants for admission, but they do not answer the distinct question whether due process permits the Government to revoke an existing liberty interest without any individualized procedure.

Accordingly, the Court again applies the balancing test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Under *Mathews*, courts consider: (1) the private interest affected; (2) the risk of an erroneous deprivation through the procedures used and the probable value of additional procedural safeguards; and (3) the government's interests, including the burdens of additional procedures.

**i. Private Interest**

"The interest in being free from physical detention is the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *Martinez v. Noem*, 5:25-CV-1007, 2025 WL 2598379, at *2 (W.D. Tex. Sept. 8, 2025). Although *Buenrostro-Mendez* establishes that § 1225(b) authorizes mandatory detention, it does not eliminate the liberty interest that developed after the Government knowingly permitted Zarate to remain at liberty in the United States for almost 10 years before re-detaining him.

Unlike cases involving individuals who lived in the United States without the Government's knowledge until their eventual apprehension, *see Sosnava-Rodriguez*

*v. Ortega*, 26-50183, 2026 WL 1906557, at *15 (5th Cir. July 2, 2026), *reh'g en banc granted, opinion vacated*, 2026 WL 2014647 (5th Cir. July 10, 2026), Zarate's re-detention did not result from the Government's first discovery of his presence. In fact, DHS knew of Zarate's presence, as he was previously apprehended and released on bond in June of 2016. *See* R. Doc. 13 at 7–8; *see also* R. Doc. 13-1 at 3. It knowingly permitted him to remain at liberty while his immigration proceedings were pending. Thus, regardless of the legal characterization of Zarate's initial release, the Government knowingly permitted him to reside in the community while his immigration proceedings progressed before re-detaining him in August 2025.

Thus, the first factor strongly favors Zarate.

**ii. Risk of Erroneous Deprivation**

The second *Mathews* factor likewise favors Zarate. The Government re-detained Zarate without providing advance notice, an opportunity to be heard, or any individualized process before depriving him of his liberty. As this Court noted in *Andrade-Cunalata*, the complete absence of procedural safeguards creates a substantial risk of erroneous deprivation because the Government alone determines when a previously granted liberty interest will be revoked. *See Andrade-Cunalata*, 2026 WL 2059117.

The Government argues that no additional procedures are constitutionally required because Zarate is subject to mandatory detention under § 1225(b) and is detained for the limited purpose of removal proceedings. *See* R. Doc. 13 at 13–15. Minimal procedural safeguards could reduce the risk of erroneous deprivation

without altering the statutory detention framework. At a minimum, notice of the reasons for re-detention and an opportunity to contest the factual issues surrounding the revocation of Zarate's liberty would provide meaningful procedural protection while leaving the ultimate statutory detention determination intact.

**iii. Government's Interest**

The Government unquestionably possesses a substantial interest in enforcing the immigration laws enacted by Congress and in detaining those individuals whom Congress has made subject to § 1225(b).

Providing constitutionally adequate procedures before revoking previously granted liberty does not undermine Congress's determination that applicants for admission are generally subject to mandatory detention. Rather, it requires only that the Government afford constitutionally adequate procedures before withdrawing liberty it has previously conferred. Due process protections remain applicable even when government authorities possess discretion to revoke supervision. *See Mendoza v. Noem*, 823 F.Supp.3d 636, 649 (W.D. Tex. Feb. 26, 2026); *Lepe Hernandez v. Noem,* 5:26-CV-0694, 2026 WL 990024, at *4 (W.D. Tex. Apr. 13, 2026).

Balancing the three *Mathews* factors, the Court concludes that the Government violated Zarate's procedural due process rights by re-detaining him without affording any individualized process after permitting him to remain at liberty for almost 10 years. This conclusion is consistent with this Court's prior decisions recognizing that *Buenrostro-Mendez* resolves the statutory question of detention authority, but not the separate constitutional question of whether the Government

may revoke an established liberty interest without affording due process. *See Buenrostro-Mendez* 166 F.4th 494.

Finally, the Government suggests that this Court should stay the proceeding. Citing *Sosnava Rodriguez v. Ortega*, No. 26-50183 (5th Cir.) they argue, "[c]onsidering the stay of the *Sosnava Rodriguez* district court judgments, and the pending rehearing en banc, Federal Respondents submit no relief should be granted to Petitioner in this case based on his due process claims until there is a full resolution on rehearing in *Sosnava Rodriguez*." R. Doc. 13 at 11. The Fifth Circuit, however, did not stay this proceeding in *Sosnava*. Thus, the Court declines to stay this proceeding and declines to postpone Petitioner's release. Because the Court concludes that Zarate is entitled to relief on his procedural due process claim, it need not address his remaining arguments.

## III. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that the Petition for Writ of Habeas Corpus (R. Doc. 1) is **GRANTED**. Respondents are **ORDERED** to release Zarate from custody under appropriate conditions of supervision, with his personal property, within seven days.

**IT IS FURTHER ORDERED** that the parties file a joint notice of compliance with this Order within 24 hours of Zarate's release.

**THUS DONE AND SIGNED** this 23rd day of September, 2026.

**JERRY EDWARDS, JR.**
**UNITED STATES DISTRICT JUDGE**